UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

A.A.,

Petitioner,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATIONS AND CUSTOMS ENFORCEMENT, DAVID J. VENTURELLA, SAM OLSON, BRIAN ENGLISH, and MARKWAYNE MULLIN,

Respondents.

CAUSE NO. 3:26-CV-979-CCB-SJF

**OPINION AND ORDER**

Immigration detainee A.A., by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 2. Before turning to the merits of the petition, there are pending motions to seal that must be addressed.

To maintain a filing under seal, the court must find that good cause exists to maintain them under seal as requested. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). But judicial records are presumed public unless "the property and privacy interests of the litigants . . . predominate in the particular case." *Id.* Establishing such predominance is difficult as "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification" by the court. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d

346, 348 (7th Cir. 2006). Accordingly, "[i]nformation that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." *United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009). The decision of whether good cause exists to maintain a document under seal rests solely with the court. *Id.*

A.A. has already been granted leave to proceed under a pseudonym because revealing his name could put him in danger based on his past gang affiliation and cooperation with the United States government. *See* ECF 18 at 1 n.1. And this court has already found that he has shown good cause to keep under seal the details surrounding his past gang affiliation and cooperation with the United States government. ECF 41 at 2. However, the court found it was unnecessary to seal unredacted documents when confidentiality could be maintained through redactions in the documents that are in the public record. *Id.* at 3 (citing *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (sealing unnecessary when redactions are sufficient to protect confidential information)).

In response to his first motion to seal, the court allowed A.A. to maintain under seal unredacted versions of several documents (ECF 1, ECF 15, ECF 5, ECF 6, and ECF 8) because the public versions had redacted information relating to his past gang affiliation and cooperation with the United States government. ECF 41 at 3. A.A. has since filed those unredacted documents under seal. ECF 47. However, in that same order, he was denied leave to file all of the exhibits attached to his habeas petition under seal because his request was too broad. ECF 41 at 2-3. Some exhibits clearly

contained confidential information that should remain under seal, but others contained no details specific to A.A., and the rest had only his name, which could be redacted to maintain confidentiality without the need to place anything under seal. *Id.* The sealed exhibits were stricken from the record,[1] and he was instructed to re-file in the public record the exhibits that do not need to be filed under seal, either because they contain no personal information or because redactions are sufficient to protect his identity and to re-file under seal the exhibits he believed were necessary to maintain under seal, along with a motion to seal, explaining why each exhibit should be sealed. *Id.* at 4.

A.A. filed in the public record eight of the eleven exhibits attached to the petition, with redactions as needed to protect his confidentiality. ECF 48. He also filed a renewed motion to seal, seeking to maintain under seal nine exhibits. ECF 50. Three of those exhibits (Exhibit C, transcript of A.A.'s proceedings in immigration court; Exhibit D, a declaration from a witness about A.A.'s cooperation with the United States government; and Exhibit I, A.A.'s third country fear declaration) were not filed in the public record, even with redactions, because A.A. determined redactions would not be sufficient to protect him. The rest are unredacted versions of the redacted exhibits filed in the record, some of which merely have personally identifying information and others have details about his government cooperation.

This request is too broad. If the only information that was redacted was A.A.'s true name and other information that could identify him, it is unnecessary to place that

---

[1] The exhibits were filed in several places on the docket, and all were stricken. One docket entry was inadvertently overlooked (ECF 16), and so that entry will be stricken as well.

unredacted information in the record under seal. Rather than delaying decision in this case even further, the court will deny the motion (ECF 50), strike the sealed exhibits (ECF 49), and proceed solely based on the redacted exhibits in the public record (ECF 48). The brief in support of the motion to seal (ECF 51), however, will remain under seal.

Next, the court considers A.A.'s motion to seal (ECF 44, ECF 46) the unredacted versions (ECF 43) of the redacted exhibits attached to his status report (ECF 42). This motion relies on the same need to protect details regarding his past gang affiliation and cooperation with the United States government. However, the redactions in the publicly filed exhibits suffice to protect his identity and he has not shown a need to file the unredacted versions of the exhibits under seal. The only redactions in Exhibit A, Exhibit B, and Exhibit D (ECF 42-1, 42-2, 42-4) are of his name and Alien Identification Number. These redactions are appropriate, but it is unnecessary to file unredacted versions of these documents. The court and the respondent are aware of the petitioner's identity. Likewise, Exhibit C (ECF 42-3), a letter from counsel to ICE requesting A.A.'s release, redacts A.A.'s name and Alien Identification Number and, in addition, redacts details about where he has lived and his cooperation with the government. It is unnecessary to file an unredacted version of this document because these additional details included in counsel's letter have no bearing on the status report A.A. filed, which informs the court of recent events in A.A.'s detention, specifically that he has received a 90-day custody review. A.A. may redact sensitive information in his filings, and he need not file unredacted versions under seal if the redacted information is simply identifying

information or otherwise not relevant to deciding the petition. The motion to seal (ECF 44, ECF 46) will be denied, the sealed exhibits (ECF 43) will be stricken, and the court will decide the petition based solely on the redacted exhibits (ECF 42). The brief in support of the motion to seal (ECF 45), however, will remain sealed.

Finally, the court previously denied A.A.'s motion to file his reply brief and accompanying exhibits under seal. ECF 52. It found his reply brief did not contain personally identifying information that is not already included in public filings, and the only apparent confidential information in the exhibits were his name and Alien Identification Number, which could be kept confidential through redactions without the need to file anything under seal. *Id.* at 2-3. The court ordered him to re-file the reply brief and exhibits in the public record, with redactions as necessary to protect his identity, or to file a renewed motion to seal with more detail about the specific facts that must be kept under seal. *Id.* at 3.

In response to the order, A.A. filed his reply brief and exhibits in the public record, with redactions. ECF 53, ECF 54. In addition, he moves to file under seal unredacted versions of his reply brief and Exhibit B, his Final Administrative Removal Order. ECF 56. As before, this motion will be denied because the redactions are sufficient to protect confidential information and the unredacted information is not needed to decide this case. The court will strike the sealed exhibit (ECF 55) but keep the brief in support of the motion (ECF 57) under seal.

Therefore, in deciding the petition, the court will consider A.A.'s redacted and unredacted habeas petition (ECF 1, ECF 47-1), the redacted exhibits to the petition (ECF

48), the Warden's answer (ECF 32), A.A.'s status report and attached redacted exhibits (ECF 42), and A.A.'s redacted reply (ECF 54) and redacted exhibits to the reply (ECF 53).

## BACKGROUND

A.A. is a citizen of El Salvador who entered the United States without inspection in 2006. In 2013, he was convicted of a federal charge based on his involvement in gang activity and sentenced to 235 months' incarceration. ECF 32-1 at 4. While he was imprisoned, he was issued an administrative order of removal in 2019. ECF 53-2. Upon his release from prison, his removal order was not executed because of his cooperation with the United States government, and he was released on an Order of Supervision.

A.A. later violated the terms of his release, which resulted in Immigration and Customs Enforcement (ICE) attempting to remove him to El Salvador. He asserted a fear of removal, and an immigration judge granted him deferral of removal to El Salvador under the Convention Against Torture (CAT) on May 14, 2024. ECF 32-1 at 13-14. The Department of Homeland Security (DHS) appealed the grant of CAT relief to the Board of Immigration Appeals, which affirmed the decision on November 7, 2024. ECF 32-1 at 15-21. While he was in custody, ICE attempted to remove A.A. to Belize, Colombia, and Ecuador without success. ECF 48-3 at 2. He was released from ICE custody on January 10, 2025, after a determination that there was no significant likelihood of removal in the reasonably foreseeable future. *Id.*; ECF 32-1 at 11.

After his release from custody, A.A. received employment authorization, secured gainful employment, and was working. He says that as a condition of his release, he

was fitted with an ankle monitor and enrolled in ICE's Intensive Supervision Appearance Program. He reports that he has attended all scheduled check ins, has been fully compliant with all conditions of his Order of Supervision, and has committed no crimes. He continued to seek a third country that would accept him for removal. He sent letters to Canada, the United Kingdom, Ireland, Spain, Japan, and Chile, seeking permission to be removed there. ECF 48-5.

On June 30, 2026, A.A. was arrested pursuant to a warrant at a scheduled check in. ECF 32-1 at 3, 6-8. His supervised release was revoked pursuant to 8 C.F.R. § 241.13(i), citing that his case is under review for removal to a third country. *Id.* at 11-12. He was provided with an informal interview the same day of his arrest, and his detention was continued. *Id.* at 10. On July 7, 2026, A.A. was served with a Notice of Removal, stating, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico." ECF 32-2 at 2. The certificate of service states that the contents of the notice were read to A.A. in Spanish, and A.A. refused to sign to acknowledge receipt of the notice. *Id.*

A.A. filed this habeas petition the day after he was re-detained, arguing that his detention was unlawful. He argued his re-detention was unlawful absent any material change in circumstances. He further argued that his removal to Mexico would not be safe because of his past gang affiliation, and he challenges the sufficiency of the procedures used to determine whether removal to a third country would place him at risk of persecution or torture. Finally, he argued his detention was unlawful because

there is no significant likelihood of removal to Mexico or any alternative country in the reasonably foreseeable future.

In answering the petition, the Warden states that A.A. was advised that ICE intended to remove him to Mexico. ECF 32-2. However, he acknowledges that because A.A. refused to sign the notice, it is unlikely that he will be removed there. The Warden represents that the Department of Homeland Security continues to work to effectuate A.A.'s removal. The Warden suggests that A.A.'s continued detention is justified by his failure to cooperate with removal efforts, specifically his refusal to sign the notice of third country removal to Mexico.

In reply, A.A. explains that he did not sign the Notice of Removal because it was not adequately translated or explained to him and he was denied the opportunity to consult with his attorneys, which he specifically requested. ECF 53-1 ¶ 4. Moreover, he notes the Warden does not explain why his failure to sign a notice stating ICE's intent to remove him to Mexico would thwart their ability to effectuate his removal. A.A. reiterated that there are significant obstacles to his removal to a third country. Three countries had already rejected ICE's requests to accept him for removal, and he has contacted six more countries without success. Additionally, he points out that there is no evidence ICE has even contacted Mexico or any other third country about a potential removal during his current detention. He argues this shows there is no significant likelihood of his removal in the reasonably foreseeable future.

SUBJECT MATTER JURISDICTION

The Warden first argues that the court lacks subject matter jurisdiction over A.A.'s habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang v. English*, No. 3:25cv1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the Warden first argues that removal to a third country is lawful, which A.A. does not dispute as long as he is given the opportunity to assert any claim of persecution or torture in the proposed country of removal.

Next, the Warden argues A.A.'s detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[2] which for A.A. ended years ago, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no

[2] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Because A.A.'s cumulative time in detention has exceeded six months, the court turns to the analysis under *Zadvydas*.

A.A. has shown good reason to believe his removal is not reasonably foreseeable with the combination of the deferral of removal to El Salvador and the many third countries that have rejected requests to accept him for removal.[3] The Warden has not

[3] A.A. argues that the burden shifting approach in *Zadvydas* in inapplicable to his case because it was already established in January 2025 when he was released on an Order of Supervision, that removal was not reasonably foreseeable. Therefore, he argues, the government bears the initial burden to show a changed circumstance to justify his re-detention. These is some support for this position. *See Abedi v. Carter*, --F.4th ---, No. 25-3179, 2026 WL 3149141, at *18 (10th Cir. Oct. 21, 2026). But because A.A. meets this initial burden, it is unnecessary to decide the extent to which the burden-shifting approach in *Zadvydas* applies to a subsequent period of detention following release on an Order of Supervision.

identified any potential third country that is currently under consideration for removal, and instead suggests that A.A.'s refusal to sign the Notice of Intent of removal to Mexico constitutes noncooperation that should preclude a finding that removal is not reasonably foreseeable.

Non-cooperation with removal efforts can be a basis to find that removal is not reasonably foreseeable. *See Kidane v. English*, No. 3:26cv235 DRL-SJF, 2026 WL 1113375, at *3 (N.D. Ind. Apr. 24, 2026) (citing *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) and *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003)). However, the only act of non-compliance the Warden identifies is A.A.'s refusal to sign the notice of intent to remove him to Mexico. The Warden does not explain how A.A.'s signature on a notice informing him that ICE intends to remove him to Mexico has any connection to ICE's ability to remove him to Mexico. The Warden does not say what Mexico requires for a third country removal or how this notice is connected to those requirements, and no connection is apparent on the face of the notice. Moreover, A.A. has asserted a fear of removal to Mexico, and under ICE's own policies, he is entitled to a fear screening. *See* ECF 32-3 at 3 ("In cases where the alien affirmatively states a fear [of removal to a third country], USCIS will generally screen the alien within 24 hours of referral from the immigration officer."). The fact that he has asserted a fear of removal to Mexico and months have gone by without receiving a fear screening is further evidence that ICE no longer intends to proceed with removal to Mexico. No other country has been identified for possible removal. Consequently, the court finds that the Warden has not demonstrated that A.A.'s removal is reasonably foreseeable. He must be released.

Because the court finds that A.A.'s detention is unlawful because his removal is not reasonably foreseeable, it is unnecessary to decide A.A.'s remaining arguments about the procedures used to revoke his supervised release and to determine whether a noncitizen has a valid fear of removal to a third country.

For these reasons, the court:

(1) **DENIES** the motions to seal (ECF 44, ECF 46, ECF 50, ECF 56);

(2) **STRIKES** the sealed documents (ECF 16, ECF 43, ECF 49, ECF 55);

(3) **DIRECTS** the clerk to maintain under seal the briefs in support of the motions to seal (ECF 45, ECF 51, ECF 57);

(4) **GRANTS** the petition for writ of habeas corpus (ECF 1) and ORDERS the respondents to release A.A. on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **October 29, 2026**; and

(5) **DIRECTS** the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED on October 28, 2026.

*/s/ Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT